CARLIE CHRISTENSEN, United States Attorney (No. 633)
MARK Y. HIRATA, Assistant United States Attorney (No. 5087)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah  84111
Telephone:  (801) 524-5682

FILED
U.S. DISTRICT COURT

2010 DEC 30  A 11: 49

DISTRICT OF UTAH

BY:_____
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case: 2:10cr01141<br>Assigned To : Waddoups, Clark<br>Assign. Date : 12/30/2010<br>Description: USA v. Wright |
| Plaintiff, | : | |
| | : | |
| v. | | |
| | : | FELONY INFORMATION |
| TRAVIS L. WRIGHT, | | |
| | : | Vio. 18 U.S.C. §§ 1341(Mail Fraud); |
| Defendant. | | 2(b) (Willfully Causing Another to |
| | : | Commit a Federal Crime) |

The United States Attorney charges:

## BACKGROUND

At all times material to this Felony Information:

**The Defendant and His Businesses**

1.     Defendant TRAVIS L. WRIGHT ("defendant WRIGHT") was a resident of

Salt Lake County, Utah, and the sole manager of Waterford Funding, LLC ("Waterford

Funding").  Waterford Funding was the sole controlling member of several related

1

entities, including, among other entities, Waterford Loan Fund, LLC and Waterford

Services, LLC. Waterford Funding also held an ownership interest in several related

entities including, among other entities, Waterford Construction, Inc. and Waterford 1031

Exchange Services, LLC.

2. Defendant WRIGHT opened, held, and maintained bank accounts, among

others, at First Utah Bank under the account names Waterford Funding, LLC ("Wright

Account 1") and Waterford Services, LLC ("Wright Account 2").

## THE SCHEME AND ARTIFICE TO DEFRAUD

3. From around September 1999 to around March 2009, in the Central

Division of the District of Utah,

## TRAVIS L. WRIGHT,

defendant herein, devised and intended to devise a scheme and artifice to defraud and to

obtain money by means of false and fraudulent pretenses, representations, and promises,

and for the purpose of executing such scheme and artifice or attempting to do so, caused

to be placed in any post office and authorized depository for mail matter, any matter or

thing whatever to be sent and delivered by the Postal Service.

## MANNER AND MEANS OF THE SCHEME AND ARTIFICE TO DEFRAUD

The scheme and artifice to defraud was accomplished in the following manner and

through the following means:

4. It was part of the scheme and artifice to defraud that defendant WRIGHT,

2

and others acting at his direction and control, solicited and induced investors to invest with

Waterford Funding through one or more of the following representations:

- Investor funds would accumulate in a common fund and be used to make hard money loans for commercial real estate projects at no greater than a 50 percent loan to value ratio.

- Payments on the above loans would provide a return to Waterford Funding sufficient to pay investors and earn Waterford Funding a profit.

- Investors would receive a promissory note promising the return of principal, along with interest ranging from 8 to 44 percent over an investment term of nine months.

- The investment would be secured by first position trust deeds on the above commercial real estate projects.

5.      It was further a part of the scheme and artifice to defraud that defendant

WRIGHT caused investors to execute a "Funding Agreement" and "Secured Promissory Note"

documenting their investment.

6.      It was further a part of the scheme and artifice to defraud that towards the

end of the nine-month investment term, defendant WRIGHT sent out mailings to investors which

offered one of three options concerning their investment: (1) roll over the entire investment,

including accrued interest; (2) roll over principal only and receive an accrued interest payment; or

(3) receive a full payment of principal and accrued interest.

7.      It was further a part of the scheme and artifice to defraud that interest and

principal payments to investors at the end of an investment term were drawn from the funds of

other investors and not profits stemming from Waterford Funding's commercial real estate

projects.  These types of financial transactions are commonly known as "Ponzi payments."

3

Defendant WRIGHT did not disclose this material fact to investors in order to create the false and misleading impression that Waterford Funding was successful, profitable, and able to meet all of its business obligations to investors and others.

8. It was further a part of the scheme and artifice to defraud that investor funds were deposited primarily into Wright Account 1 and Wright Account 2. Although defendant WRIGHT set up a number of other bank accounts under the names of Waterford Funding's related entities, Wright Accounts 1 and 2 were the primary bank accounts out of which defendant WRIGHT made or caused to be made Ponzi payments to investors. Defendant WRIGHT had full control and responsibility over the management of these bank accounts, including all transactions involving the receipt, transfer, and use of investor funds into these accounts.

9. It was further a part of the scheme and artifice to defraud that in addition to making Ponzi payments, defendant WRIGHT received and spent over $15 million in investor funds for his personal use and benefit, including:

- Purchasing a luxury home from a former NBA player and spending approximately $130,000 on landscaping, including importing cobblestones from France for the driveway.

- Taking large groups of family and friends on multiple trips, including the following destinations: Argentina, Costa Rica, Egypt, England, France, Germany, Hungary, Japan, Portugal, Spain, Tahiti, and Turkey.

- Purchasing other luxury items such as Mercedes automobiles, motorcycles, guns, and jewelry.

- Providing defendant WRIGHT's wife with approximately $5,000 to $20,000 per month of discretionary spending money.

10. From around September 2009 to around March 2009, over $100 million was invested with Waterford Funding and defendant WRIGHT.

4

## Count 1
## 18 U.S.C. § 1341
## (Mail Fraud)

11.     The United States Attorney incorporates and realleges the allegations

contained in paragraphs 1 through 10 above.

12.     M.L. invested $100,000.00 with Waterford Funding based on the representations

noted in paragraph 4 above and executed a Funding Agreement and Secured Promissory Note.

13.     On or about January 20, 2006, defendant WRIGHT sent to M.L. through the U.S.

mails a letter concerning his investment, the maturity date of February 8, 2006, and the following

three options:

- Reinvest M.L.'s principal at the annual rate of 9.74 percent and opt for an interest payment only.

- Reinvest the entire principal and interest at the annual rate of 9.74 percent.

- End M.L.'s investment with Waterford Funding and receive a check for M.L.'s full principal and interest.

M.L. decided to pursue the first option, rolling over his principal and receiving an interest

payment.

14.     On or about February 16, 2006, in the Central Division of the District of

Utah,

## TRAVIS L. WRIGHT,

defendant herein, for the purpose of executing the above scheme and artifice to defraud

and attempting to do so, caused to be placed in any post office and authorized depository

for mail matter, any matter or thing whatever to be sent and delivered by the Postal

Service, in that defendant WRIGHT sent M.L. in the U.S. mails a revised Funding Agreement

and Secured Promissory Note, along with an interest payout check in the amount of $8,542.32.

Defendant WRIGHT knew at the time that the enclosed interest payout check was paid with

investor funds and not from the profits of Waterford Funding or any of its related entities.

Defendant WRIGHT did not disclose this fact to M.L. in order to conceal and further the Ponzi

scheme described above; all in violation of 18 U.S.C. §§ 1341 and 2(b).

CARLIE CHRISTENSEN
United States Attorney


MARK Y. HIRATA
Assistant United States Attorney

6