CARLIE CHRISTENSEN, United States Attorney (No. 633)
MARK Y. HIRATA, Assistant United States Attorney (No. 5087)
Attorneys for the United States of America
185 South State Street, Suite 300
Salt Lake City, Utah 84111
Telephone: (801) 524-5682

FILED IN UNITED STATES DISTRICT COURT, DISTRICT OF UTAH

MAY 05 2011

D. MARK JONES, CLERK
BY_____
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | Case No. 2:10-cr-01141-CW |
| Plaintiff, | : | |
| vs. | : | STATEMENT BY DEFENDANT IN ADVANCE OF PLEA OF GUILTY |
| TRAVIS L. WRIGHT, | : | |
| Defendant. | : | Judge Clark Waddoups |

I hereby acknowledge and certify that I have been advised of and that I understand the following facts and rights, and that I have had the assistance of counsel in reviewing, explaining, and completing this form:

1. As part of this agreement with the United States, I intend to plead guilty to Count 1 of the Felony Information. My attorney has explained the nature of the charges against me and I have had an opportunity to discuss the nature of the charges with my attorney. I understand the charges and what the government is required to prove in order to convict me.

The elements of Count 1, in violation of 18 U.S.C. § 1341 (Mail Fraud), are:

- First, I devised a scheme and artifice to defraud or a scheme to obtain money by means of false pretenses, representations, or promises as alleged in the Felony Information;

- Second, I knowingly and willfully participated in the scheme and artifice to defraud with knowledge of its fraudulent nature and with specific intent to defraud;

- Third, in execution or furtherance of that scheme, I caused the use of the United States mails as specified in the Felony Information; and

- Fourth, the scheme employed false or fraudulent pretenses, representations, or promises that were material.

2. I know that the maximum possible penalty provided by law for Count 1 of the Felony Information, a violation of 18 U.S.C. § 1341 (Mail Fraud), is a term of imprisonment of twenty (20) years, a fine of $1,000,000.00, and a term of supervised release of three (3) years. I understand that if the supervised release term is violated, I can be returned to prison for the length of time provided in 18 U.S.C. § 3583(e)(3). Additionally, I know the Court is required to impose an assessment in the amount of $100.00 for the offense of conviction pursuant to 18 U.S.C. § 3013. Furthermore, restitution to the victims of my offense shall be ordered pursuant to 18 U.S.C. § 3663A.

3. I know that the sentencing procedures in this case and the ultimate sentence will be determined pursuant to 18 U.S.C. § 3553(a) and that the Court must consider, but is not bound by, the United States Sentencing Guidelines, in determining my sentence. I have discussed these procedures with my attorney. I also know that the final calculation of my sentence by the Court may differ from any calculation the United States, my attorney, or I may have made, and I will not be able to withdraw my plea if this occurs. However, because my plea of guilty is being entered pursuant to Rule 11(c)(1)(C), as explained below, I know that I will be able to withdraw my plea if the Court does not agree to the Rule 11(c)(1)(C) agreement.

4. I know that I can be represented by an attorney at every stage of the proceeding and I know that if I cannot afford an attorney, one will be appointed to represent me.

5. I know that I have a right to plead "Not Guilty," and I know that if I do plead "Not Guilty", I can have a trial.

6. I know that I have a right to a trial by jury, and I know that if I stand trial by a jury:

    (a) I have a right to the assistance of counsel at every stage of the proceeding.

    (b) I have a right to see and observe the witnesses who testify against me.

    (c) My attorney can cross-examine all witnesses who testify against me.

    (d) I can call witnesses to testify at trial and I can obtain subpoenas to require the attendance and testimony of those witnesses. If I cannot afford to pay for the appearance of a witness and mileage fees, the government will pay them.

    (e) I cannot be forced to incriminate myself and I do not have to testify at any trial.

  (f) If I do not want to testify, the jury will be told that no inference adverse to me may be drawn from my election not to testify.

  (g) The government must prove each and every element of the offense charged against me beyond a reasonable doubt.

  (h) It requires a unanimous verdict of a jury to convict me.

  (i) If I were to be convicted, I could appeal and if I could not afford to appeal, the government would pay the costs of the appeal, including the services of appointed counsel.

7. If I plead guilty, I will not have a trial of any kind.

8. I know that 18 U.S.C. § 3742(a) sets forth the circumstances under which I may appeal my sentence. However, fully understanding my right to appeal my sentence, and in consideration of the concessions and/or commitments made by the United States in this plea agreement, I knowingly, voluntarily and expressly waive my right to appeal as set forth in paragraph 12(a)(2) below.

9. I know that the United States may only appeal if the acceptance of the plea and sentence is contrary to terms of the plea agreement entered pursuant to Rule 11(c)(1)(C) and that 18 U.S.C. § 3742(b) otherwise sets forth the circumstances under which the United States may appeal my sentence.

10. I know that under a plea of guilty the judge may ask me questions under oath about the offense. The questions, if asked on the record and in the presence of counsel, must be answered truthfully and if I give false answers, I can be prosecuted for perjury.

11. I stipulate and agree that the following facts accurately describe my conduct. These facts provide a basis for the Court to accept my guilty plea and for calculating the sentence in my case:

**The Defendant and Waterford Funding, LLC**

From around September 1999 to around March 2009 (the "fraud period"), I started raising funds initially through an entity called "Wrightway Investments, LLC," whose name changed in around September 2001 to "Waterford Funding, LLC" (collectively, "Waterford Funding"). Through out the fraud period, I was the sole manager and controlled Waterford Funding. During that time, there were never more than two employees of Waterford Funding at any one time. These employees performed services for Waterford Funding and its related entities identified below. None of these employees ever had management authority or made decisions on behalf of Waterford Funding or any of its related entities. I alone controlled, and was the sole manager and decision maker for, Waterford Funding and its related entities.

**The Waterford Enterprise**

At all times relevant during the fraud period, I, through Waterford Funding, was the sole and controlling member of several related entities, including:

- Waterford Services, LLC
- Waterford Loan Fund, LLC
- Waterford Perdido, LLC - Through this company, I also owned a membership interest in Perdido Village, LLC
- Waterford Candwich, LLC

At all times relevant during the fraud period, I, through Waterford Funding, also held an ownership interest in the following related entities:

- Waterford Development, LC - Through this company, I also held an ownership interest in the following entities:
    - Winford Development Associates, LLC
    - Elevator Properties, LLC
    - Gables at Orem, LLC
- Waterford Construction, Inc.
- Waterford 1031, LLC - Through this company, I also held an ownership interest in Waterford 1031 Exchange Services, LLC

Waterford Funding and its related entities are hereafter collectively referred to as the "Waterford Enterprise." Throughout the fraud period, I had full control of the management of and all monies, properties, bank accounts, funds, and activities of the Waterford Enterprise.

During the fraud period, I, or others acting at my direction and control, solicited and induced investors to invest with Waterford Funding through one or more of the following representations:

- Investor funds would accumulate in a common fund and be used to lend from that fund for commercial real estate projects at no greater than a 50 percent loan to value ratio.

- Payments on the above loans would provide a return to Waterford Funding sufficient to pay investors and earn Waterford Funding a profit.

- Investors would receive a promissory note promising the return of principal, along with interest ranging from 8 to 44 percent over an investment term of nine months.

- The investment would be secured by commercial real estate and first position trust deeds.

As part of their investment, investors typically signed a "Funding Agreement" and received a "Secured Promissory Note." As noted above, the interest rates among investors varied and I often negotiated the rate on an investor-by-investor basis.

I did not intend to run a "Ponzi" scheme - - i.e., taking in funds from new investors to make interest payments to old investors - - from the day I first began taking in investment funds. However, over time, I realized and knew that my commercial real estate projects were unable to meet interest payments and principal due investors. Rather than disclosing this negative cash flow position to all current investors, I, or others acting at my direction and control, continued to solicit new investors in Waterford Funding under the same representations noted above and used such funds to make interest payments - - i.e., Ponzi payments - - to old investors. In doing so, I knowingly created the misleading impression that Waterford Funding was successful, profitable, and able to meet all of its business obligations to investors and others. In truth and fact, Waterford Funding was losing money and could not continue to pay old investors without bringing in new investors. I continued to deceive both old and new investors for the primary purpose of continuing the Ponzi scheme supporting Waterford Funding.

At the end of the investment term (typically nine months), each investor was offered one of three choices: (1) roll over the entire investment, including accrued interest; (2) roll over principal only and receive an accrued interest payment; or (3) receive a full payment of principal and accrued interest. As noted above, over time during the fraud period, I knew that interest payments made to old investors at the end of an investment term were drawn from the funds of new investors and not profits stemming from Waterford Funding's commercial real estate projects. I did not disclose this material fact to investors in an effort to induce them to roll over their entire investment or their principal back into Waterford Funding.

At all times relevant during the fraud period, investor funds were deposited into one of two bank accounts I set up at First Utah Bank under Waterford Funding LLC and Waterford Services, LLC, respectively. Although I set up a number of other bank accounts under some of the related entities in the Waterford Enterprise, the foregoing two accounts were the primary bank accounts into which investors funds were deposited and out of which I made or caused to be made Ponzi payments to investors. I had full control or responsibility over the management of these bank accounts, including all transactions involving the receipt, transfer, and use of investor funds into these accounts. In addition to making Ponzi payments, I also received and spent investor funds for my personal use and benefit.

The assets that I acquired from at least September 1999 to March 2009 were acquired through the use of funds derived solely from the Waterford Enterprise. It was not appropriate for Waterford Fund to distribute any funds to me, including those funds used for personal expenses, because Waterford Fund was not managed as promised to investors, and distributions were made from investor funds, not profits from the business.

M.L. invested $100,000.00 with Waterford Funding based on the representations noted above. In connection with M.L.'s investment, Waterford Funding provided M.L. a funding agreement and promissory note. On or about January 20, 2006, I sent to M.L. through the U.S. mails a letter reviewing his investment, noting the maturity date of February 8, 2006, offering another investment term of nine months, and outlining the following options:

- Reinvest M.L.'s principal at the annual rate of 9.74% and opt for an interest payment only.

- Reinvest the entire principal and interest at the annual rate of 9.74%.

- End M.L.'s investment with Waterford Funding and receive a check for M.L.'s full principal and interest.

In response to the above offer, M.L. decided to pursue the first option above. On or about February 16, 2006, I sent M.L. in the U.S. mails a revised funding agreement and promissory note, along with an interest payout check in the amount of $8,542.32. I knew at the time this interest check was issued to M.L. that it was paid using new investor funds and not from the profits of Waterford Funding. I did not disclose this fact to M.L. in order to further the Ponzi scheme described above.

The above acts occurred in the District of Utah and elsewhere.

12. The only terms and conditions pertaining to this plea agreement between the defendant and the United States are as follows:

(a) The defendant agrees as follows:

(1) I will plead guilty to Count 1 of the Felony Information.

(2)(a) Fully understanding my limited right to appeal my sentence, as explained above in paragraph 8, and in consideration of the concessions and/or commitments made by the United States in this plea agreement, I knowingly, voluntarily, and expressly waive my right to appeal any sentence imposed upon me, except that I do not waive my right to appeal as set forth in 18 U.S.C. § 3742(c)(1), which states that I may not file a notice of appeal if the sentence imposed is greater than the sentence set forth in this agreement or the sentence was imposed in violation of 18 U.S.C. § 3742(a)(1) or (2).

(2)(b) I also knowingly, voluntarily, and expressly waive my right to challenge my sentence, except as set forth in ¶ 2(a) above, in any collateral review motion, writ or other procedure, including but not limited to a motion brought under 28 U.S.C. § 2255.

(2)(c) I understand that this waiver of my appeal and collateral review rights concerning my sentence shall not affect the government's right to appeal my sentence pursuant to 18 U.S.C. §§ 3742(c)(2), (b)(1), and (b)(2).

(2)(d) I further understand and agree that the word "sentence" appearing throughout this waiver provision is being used

broadly and applies to all aspects of the Court's sentencing authority, including, but not limited to: (1) sentencing determinations; (2) the imposition of imprisonment, fines, supervised release, probation, and any specific terms and conditions thereof; and (3) any orders of restitution.

(3) To prepare my Pre-Sentence Report, I acknowledge that the United States Probation Office will ask me to complete the "Probation 48 Financial Packet" and to provide supporting documentation for the representations I make therein. I agree to truthfully and accurately complete the "Probation 48 Financial Packet" and to provide a copy of it and all supporting documentation attached thereto to the United States Probation Office and to the United States Attorney's Office within **three weeks** of my change of plea. I also consent to allowing the United States Attorney's Office to run a credit check on me. I understand that providing false or incomplete information or refusing to provide this information may be used as a basis for a separate prosecution under 18 U.S.C. § 1001.

(4) I consent to the Probation Office or the United States Attorney's Office obtaining a report of my credit record and using the information from that report in preparing the Presentence Report, at sentencing, or in any subsequent action, proceeding, or hearing related to the present action.

(5) I agree that, pursuant to the provisions of 18 U.S.C. §§ 3663A(a)(1) and (c)(1)(A)(ii), I am obligated to make restitution and the Court is obligated to order that I pay it. I understand and agree that the Court will determine at sentencing the final amount of restitution I must pay. In addition:

(a) I understand that the amount of restitution will be determined as a part of the sentencing proceedings in accordance with the provisions of 18 U.S.C. § 3664. I agree to pay all restitution as ordered by the Court. I understand the payment of restitution is governed by 18 U.S.C. § 3664, and my lawyer has explained the consequences of an order of restitution.

(b) I agree to pay restitution during any period of incarceration imposed on me as determined by the Court. I understand and agree that payment of any restitution owed should be a condition of any term of probation or supervised release imposed upon

      me. I know that if I fail to pay, the failure can be considered a violation of probation or supervised release and, pursuant to 18 U.S.C. § 3614, the Court can resentence me to any sentence which might originally have been imposed in my case.

   (c) I agree that I will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding.

(6) To help me meet my obligations to pay restitution and/or a fine, I consent to being placed on the Treasury Offset Program and State Finder.

(7)(a) I agree to forfeit all interests in any asset that is related to my offense of conviction that I currently own or over which I exercise control, directly or indirectly, including any property I have transferred, and any property that is traceable to, derived from, fungible with, or a substitute for property that constitutes the proceeds of his offense.

(7)(b) I further agree to waive all constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. I acknowledge that all property covered by this agreement is subject to forfeiture as property involved in illegal conduct giving rise to forfeiture.

(8) I understand that if I knowingly violate any local, state or federal law between now and the time of my sentencing, such offense may constitute a violation of this plea agreement. I also understand that the Court will decide whether a violation of the plea agreement has occurred. If the Court finds that I have breached this agreement by violating any law, I understand that the Court may relieve the government of all obligations and commitments in this plea agreement while leaving intact my plea of guilty.

(b) The defendant and the United States agree as follows:

  (1) The offense to which the defendant is pleading guilty:

    •  Involved a loss greater than $20 million but not greater than $50 million.

    •  Involved more than 49 but not more than 249

                        victims.

- Involved sophisticated means.

(2)     Pursuant to Rule 11(c)(1)(C), a sentence of 96 months imprisonment is the appropriate disposition of the case.

(3)     This agreement, including the defendant's plea, the agreed upon sentence, and all other terms referenced herein, are subject to the approval of and acceptance by the Court. The defendant and the United States further understand that the Court will likely order the preparation of a Presentence Report to assist in the determination of whether this plea and the agreement are appropriate, and the parties agree to fully cooperate in the preparation of the Presentence Report.

(4)     If, after receiving all relevant information, the Court rejects the plea agreement and determines that the agreed upon sentence of 96 months imprisonment is not an appropriate disposition of the case, the defendant will have the right to withdraw his plea of guilty and the terms of this agreement will become null and void. Similarly, if the Court rejects the plea agreement and determines that the agreed upon sentence of 96 months imprisonment is not an appropriate disposition of the case, the United States will have the right to move to vacate this agreement, and the terms of this agreement, including the plea, will become null and void.

(5)     All other sentencing provisions (e.g., supervised release, restitution, assessments, etc.) will be imposed in accordance with applicable law.

                        \*      \*      \*      \*

I make the following representations to the Court:

1.     I am _40_ years of age. My education consists of _BA Degree History_ I can read and understand English.

2.     This Statement in Advance contains all terms of the agreements between me and the government; if there are exceptions, the Court will be specifically advised, on the record, at the time of my guilty plea of the additional terms. I understand the government and I cannot have terms of this plea agreement that are not disclosed to the Court.

3.     No one has made threats, promises, or representations to me that have

        caused me to plead guilty.

4. Neither my attorney nor the government has represented to me that I would receive probation or any other form of leniency because of my plea.

5. I have discussed this case and this plea with my lawyer as much as I wish, and I have no additional questions.

6. I am satisfied with my lawyer.

7. My decision to enter this plea was made after full and careful thought; with the advice of counsel; and with a full understanding of my rights, the facts and circumstances of the case, and the consequences of the plea. I was not under the influence of any drugs, medication, or intoxicants when the decision to enter my plea was made, and I am not now under the influence of any drugs, medication, or intoxicants.

8. I have no mental reservations concerning the plea.

9. I understand and agree to all of the above. I know that I am free to change or delete anything contained in this Statement in Advance. I do not wish to make changes to this agreement because I agree with the terms and all of the statements are correct.

DATED this   5   day of May, 2011.

                              _____
                              TRAVIS L. WRIGHT
                              Defendant

Attorney Certification

I certify that I have discussed this Statement in Advance with the defendant, that I have fully explained his rights to him, and I have assisted him in completing this form. I believe that he is knowingly and voluntarily entering the plea with full knowledge of his legal rights and that there is a factual basis for the plea.

DATED this 5th day of May, 2011.

ROBERT HUNT
Attorney for Defendant

I represent that all terms of the plea agreement between the defendant and the government have been, or will be at the plea hearing, disclosed to the Court, and there are no off-the-record agreements between the defendant and the United States.

DATED this 5th day of May, 2011.

CARLIE CHRISTENSEN
United States Attorney

MARK Y. HIRATA
Assistant United States Attorney